UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMILA S. RUVALCABA,<br><br>                    Plaintiff,<br><br>    v.<br><br>OCWEN LOAN SERVICING, LLC, PROSPECT MORTGAGE, LLC, and PEOPLE'S ESCROW, INC.,<br><br>                    Defendants.<br><br>AND RELATED CROSS-CLAIMS | Case No. 15-cv-744-BAS-DHB<br><br>**ORDER:**<br><br>**(1) DENYING PROSPECT AND ESCROW'S MOTIONS TO DISMISS, and**<br><br>**(2) DENYING IN PART AND GRANTING IN PART OCWEN'S MOTION TO DISMISS** |

Plaintiff Camila Ruvalcaba filed her Second Amended Complaint ("SAC") alleging four causes of action against Ocwen Loan Servicing, LLC ("Ocwen"), for violations of the California Fair Debt Collections Practices Act ("FDCPA"), the Federal Fair Credit Reporting Act ("FCRA"), the California Consumer Credit Reporting Agencies Act ("CCRA"), and negligence. (ECF No. 64.) Plaintiff also alleges counts of negligence against Prospect Mortgage, LLC ("Prospect") and People's Escrow, Inc. ("Escrow'). (*Id.*)

– 1 –

All three Defendants filed Motions to Dismiss. (ECF Nos. 71, 74, 75.) Plaintiff opposes these Motions. (ECF Nos. 77, 78, 81.) For the reasons discussed below, the Court **DENIES** Prospect and Escrow's Motions to Dismiss (ECF Nos. 74, 75) and **DENIES IN PART AND GRANTS IN PART** Ocwen's Motion to Dismiss. (ECF No. 71.)

## I. STATEMENT OF FACTS[1]

Plaintiff entered into a mortgage loan with Ocwen (SAC ¶ 25.) In 2013, in order to reduce her mortgage payments, Plaintiff attempted to refinance the Ocwen mortgage loan with Prospect. (SAC ¶¶ 27–28.) In November 2013, when the refinancing was set to take place, Ocwen accidentally debited two mortgage payments, which caused Ocwen to send an incorrect payoff quote to the escrow company managing the refinance, Escrow. (SAC ¶¶ 29–34.) Ocwen corrected the accidental debit and provided an updated payoff quote to Prospect, but failed to provide the updated quote to Escrow until three weeks after escrow closed. (SAC ¶¶ 35, 42–43.) Alternatively, Plaintiff alleges Ocwen properly notified Escrow of the corrected payoff amount. (SAC ¶ 46.)

Escrow incorrectly sent Plaintiff notice that the escrow on the refinancing had successfully closed, when in fact there was still approximately $5,000 owed to Ocwen. (SAC ¶¶ 38, 47.) Ocwen never issued and released the Deed of Trust. (SAC ¶ 48.) Instead of applying the amount received as a payoff to the mortgage balance, Ocwen held the payoff funds in suspense for over seven months and sent mortgage statements to Plaintiff. (SAC ¶ 51.)

Plaintiff stopped paying Ocwen and began paying Prospect. (SAC ¶ 55.) When she received delinquency notices from Ocwen, she contacted Prospect, who assured her she could ignore the collection attempts "and that everything was fine."

---

[1] All facts are taken from the SAC. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party.)

(SAC ¶ 57.) None of the defendants informed Plaintiff that there was a problem with the payoff balance or the refinancing. (SAC ¶¶ 45, 58, 65.) Ocwen ultimately sent derogatory credit information to at least three consumer reporting agencies—Equifax, Experian, and TransUnion—indicating that Plaintiff had failed to make payments on her Ocwen mortgage. (SAC ¶¶ 166–68.)

Plaintiff alleges Ocwen made false or misleading statements to her when it: (1) failed to disclose the ongoing payoff dispute with Prospect and simply continued to send monthly mortgage account statements (SAC ¶ 65); (2) requested payments in substantially higher amounts than the alleged $5000 deficiency (SAC ¶ 66); (3) failed to include information that might have helped Plaintiff have any context on the payoff dispute or information that could have led Plaintiff to potentially help facilitate a resolution of the dispute (SAC ¶ 67); (4) sent statements with wildly fluctuating balances without explanation and without referencing the $5000 delinquency (SAC ¶ 76); (5) claimed Plaintiff could lose her home if she didn't pay more than the $5000 she actually owed (SAC ¶ 82).

## II. ANALYSIS

### A. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678

1 (quoting *Twombly*, 550 U.S. at 557).

2 "When a pleader is in doubt about what actually occurred or what can be established by the evidence, the modern practice allows that party to plead in the alternative and make inconsistent allegations." *Mendoza v. Rast Produce Co., Inc.*, 45 Cal. Rptr. 3d 525, 531 (Ct. App. 2006) (citing *Adams v. Paul*, 904 P.2d 1205 (Cal. 2005)); *see also* Fed. R. Civ. P. 8(d)(2) ("A party may set out two or more statements of a claim or defense alternatively or hypothetically[.]"). "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

As a general rule, a court freely grants leave to amend a complaint which has been dismissed. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**B. Request for Judicial Notice**

Ocwen requests that the Court take judicial notice of the: (1) original note with Ocwen; (2) original payoff quote; (3) amended payoff quote; (4) first pay off quote after escrow closed; (4) second payoff quote after escrow closed; (6) letter

from Ocwen to Ruvalcaba indicating she had a delinquent account; (7) Deed of Trust recorded; (8) sample of monthly mortgage statements from Ocwen; (9) sample of delinquency notes from Ocwen; and (10) September 19, 2014 letter referenced in the Complaint. (ECF No. 72.) Plaintiff objects to this request claiming that it will convert the Motion to Dismiss into one for Summary Judgment. (ECF No. 77.) The Court disagrees.

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), *superseded by statute on other grounds*. However, documents specifically identified in the complaint whose authenticity is not questioned by parties may also be considered. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superseded by statutes on other grounds). Moreover, the court may consider the full text of those documents even when the complaint quotes only selected portions. *Id.* It may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

All of the documents listed in Ocwen's Request for Judicial Notice are referenced and identified in the complaint. Although Plaintiff objects to their consideration, she does not claim that the documents lack authenticity. Therefore, Ocwen's Request for Judicial Notice will be **GRANTED**. (ECF No. 72.)

Escrow requests that the Court take judicial notice of the various Complaints filed in this case. (ECF No. 74-3) Although the Court believes such a request is unnecessary and would be automatically considered by the Court, the Court will **GRANT** this unopposed request as well.

**C.   California FDCPA (Count One)**

Plaintiff alleges Ocwen violated certain federal provisions of the FDCPA that are incorporated into the California FDCPA, including 15 U.S.C. §§ 1692d (sending debt collection letters that were "abusive, oppressive and harassing"), 1692e (using

1  "false, deceptive or misleading misrepresentations or means in connection with the
2  collection of [a] debt"), 1692f (using "unfair and unconscionable means to collect or
3  attempt to collection any debt") and 1692c ("attempting to collect an alleged debt
4  from a represented party.") *See* Cal. Civ. Code § 1788.17 (incorporating these
5  federal statutes into the California FDCPA).  Plaintiff also alleges that Ocwen
6  violated California Civil Code § 1788.14(c) (debt collector who initiates
7  communications, other than statements of account, with debtor who debt collector
8  has been notified is represented by counsel).

### 1. § 1692d

"A debt collector may not engage in any conduct [intended] to harass, oppress or abuse any person in connection with the collection of any debt." 15 U.S.C. § 1692d.  The section lists six non-exhaustive examples of such conduct. These examples include, but are not limited to: (1) using or threatening to use violence, (2) using obscene or profane language, (3) publishing a list of consumers who refuse to pay a debt, (4) advertising the sale of any debt, (5) engaging any person in a telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass any person at the called number, and (6) calling any person without meaningful disclosure of the caller's identity. *Id.* The debtor's protection is limited, however, to "oppressive and outrageous" conduct. *See Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1466 (C.D. Cal. 1991) (citations omitted). The section does not protect a debtor from mere inconvenience or embarrassment that is the natural consequence of a debt collection. *Id*.

Plaintiff fails to allege any conduct that would fall under this code section. She alleges only receiving letters and bills from Ocwen. *See Masuda*, 759 F. Supp. at 1465 (letters represent the least intrusive means of communication with a debtor). Although she claims the bills were misleading and/or inaccurate, she does not allege any threats of violence, obscene or profane language or other conduct that might be construed as conduct intended to harass, oppress or abuse her.

1   Hence, Plaintiff fails to allege a violation of this section.

2       **2.   § 1692e**

3       "A debt collector may not use any false, deceptive or misleading
4   representation or means in connection with the collection of any debt." 15 U.S.C. §
5   1692e. The false statement must be material. *See Donohue v. Quick Collect, Inc.*,
6   592 F.3d 1027, 1034 (9th Cir. 2010) ("[W]e are not concerned with mere technical
7   falsehoods that mislead no one, but instead with genuinely misleading statements
8   that may frustrate a consumer's ability to intelligently choose his or her response.")
9   "The FDCPA is a strict liability statute that makes debt collectors liable for
10  violations that are not knowing or intentional." *Id.* at 1030 (quotations omitted); *see
11  also Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176 (9th Cir.
12  2006) (intent of the debt collector in making the misleading statement is only
13  relevant to damages).

14      In determining whether Plaintiff has alleged sufficient misconduct, the Court
15  must engage in an objective analysis "that takes into account whether the least
16  sophisticated debtor would be misled by a communication." *Donohue*, 592 F.3d at
17  1030. "[A] literally true statement can still be misleading." *Gonzales v. Arrow Fin.
18  Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011). A debt collection letter violates
19  this section when it sends a debt collection letter which "can be reasonably read to
20  have two or more different meanings, one of which is inaccurate." *Id.*

21      The statute includes a non-exhaustive list of examples of proscribed
22  conduct—several of which are at issue in this case. *See* 15 U.S.C. §§ 1692e(2)(A)
23  (misrepresenting amount or character of debt), 1692e(4) (misrepresenting that
24  nonpayment of debt will result in sale of property, when such sale would either not
25  be lawful or debt collector has no intention of acting on the threat), and 1692e(5)
26  (threatening to take action that cannot legally be taken). Plaintiff alleges Ocwen
27  falsely stated the amount of the debt, sending statements with wildly fluctuating
28  balances which vastly exceeded the $5000 she owed after submitting the pay-off

amount. (SAC ¶¶ 66, 76.) Plaintiff also alleges that Ocwen falsely stated that she could lose her home if she didn't pay more than the $5000 owed, even though this was legally untrue and Ocwen had no intention of foreclosing. (SAC ¶ 82.) Finally, Plaintiff alleges that Ocwen failed to explain or give context to the increasing bills she was receiving, despite the fact that it was engaged in a payment dispute with Prospect as to the pay-off balance. (SAC ¶¶ 65, 67.)

Under the least sophisticated debtor standard, the SAC adequately states a claim under this statute. Plaintiff alleges sufficient facts to support her claim that she could not intelligently choose a response because she did not have the context regarding the payoff dispute amount that Ocwen (and Prospect) did.

Ocwen argues its debt collection letters were not deceptive because they accurately conveyed a debt that was owed by Plaintiff. However, the Act is designed to protect consumers "regardless of whether a valid debt actually exists." *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982). In this case, Plaintiff alleges sufficient facts that, although a debt may have existed, the reason for that debt and the amount of that debt was deceptively withheld and misrepresented to her.

Ocwen further argues that, even if its statements were deceptive, Prospect and Escrow had knowledge of the deception, and, as agents of Plaintiff, their knowledge should be imputed to Plaintiff. However, there is nothing in the SAC that would suggest that either Prospect or Escrow knew about the statements being sent by Ocwen to Plaintiff. Although they may have had word that the payoff balance was incorrect, there is nothing to suggest that they were privy to the communications Ocwen was having with Plaintiff. Since there is nothing to suggest in the SAC that either Escrow or Prospect had notice of Ocwen's false, deceptive or misleading representations to Plaintiff, Ocwen's argument on this point must fail.

### 3.  § 1692f

"A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The FDCPA does not define "unfair

or unconscionable" but again provides a non-exhaustive list of examples of such conduct. 15 U.S.C. § 1692f.

In this case, Plaintiff realleges the false and misleading statements discussed above and alleges that this constituted "unfair or unconscionable means" to collect on the debt. The Ninth Circuit has found that "one action can give rise to multiple violations of the [FDCPA]." *Clark*, 460 F.3d at 1177. And it is not unusual for an action to violate more than one FDCPA provision. *Id.*

"While 'misleading' practices under § 1692e and 'unfair' practices under § 1692f reference separate categories of prohibited conduct, they are broad, potentially overlapping, and are not mutually exclusive. A debt collector's action could be 'misleading' under § 1692e, 'unfair' under § 1692f, or, as alleged here, both. The distinct characteristics of § 1692e and § 1692f can also confirm one another." *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 536 (6th Cir. 2014).

In this case, Plaintiff alleges that Ocwen's actions in sending incorrect bills were misleading, but Plaintiff also alleges that Ocwen's actions were unfair: (1) it caused the problem in the first place with its erroneous payoff balance, (2) it failed to communicate the problem to Plaintiff, and (3) because it failed to explain the problem, Plaintiff did not understand she owed a debt, and (4) nonetheless Ocwen told the consumer reporting agencies that she was in default. This adequately states a claim for an unfair practice under § 1692f.

**4.     Contact with Represented Party**

Plaintiff alleges that Ocwen violated both 15 U.S.C. § 1692c (incorporated by reference in the California FDCPA by California Civil Code §1788.17) and California Civil Code § 1788.14(c). These code sections, although similarly worded, have one distinct difference. Section 1692c(2) directs that:

> [A] debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt.

Section 1788.14(c) states that:

> A debt collector shall not initiate communications, *other than statements of account*, when the debt collector has been previously notified in writing by the debtor's attorney that the debtor is represented by such attorney with respect to the consumer debt[.]

Cal. Civ. Code § 1788.14(c) (emphasis added). The former does not provide an exception for "statement of account" or billing statements.

In a well-reasoned opinion, the Court in *Marcotte v. General Elec. Capital Servs, Inc.*, 709 F. Supp. 2d 994 (S.D. Cal. 2010), discusses this anomaly and concludes ultimately that section 1692c, when it is applied via California Civil Code section 1788.17, should also provide an exception for billing statements. This Court adopts the reasoning and conclusion laid out in *Marcotte* and finds that a "statement of account" or billing statement sent to a represented debtor does not violate either section 1788.14(c) or section 1692c.

In this case, Plaintiff alleges she retained an attorney to assist her in dealing with Ocwen's debt collection who filed a Complaint and sent notice to Ocwen on April 6, 2015 that he was representing Plaintiff in connection with this debt. (SAC ¶ 146.) Despite this notice, Plaintiff alleges Ocwen sent a "collection notice correspondence" to her directly requesting that she begin paying Ocwen $4532.45 on April 27, 2016. (SAC ¶ 147.) Plaintiff also claims that on March 7, 2016, nearly a year after the lawsuit was originally filed, Ocwen sent her another "collection notice correspondence" instructing Plaintiff to pay Ocwen monthly mortgage payments of $4608.42 starting May 1, 2016. (SAC ¶ 156.)

Ocwen requests that the Court take Judicial Notice of the "collection notice correspondence" and points out that this was simply the Escrow Analysis Results Ocwen was required to send under Title 12 U.S.C. § 2609(b). The Court agrees. The "collection notice correspondence" sent by Ocwen constitutes statutorily required "statements of account" and, for the reasons laid out in *Marcotte*, is not actionable under either section 1692c or 1788.14(c).

### D. FCRA, 15 U.S.C. §§ 1681s-2(b)(1) (Count Two)

Congress enacted the FCRA, 15 U.S.C. §§ 1681-1681x, "to ensure fair and accurate credit reporting, promote efficiency in the banking system and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 50 (2007)), *cert. denied* 562 U.S. 828 (2010). Section 1681s-2 lays out the duties with which a furnisher of information to credit reporting agencies ("CRAs") must comply. *Id.* at 1154. Under section 1681s-2(b) a furnisher of information, like Ocwen, must comply with certain duties once it gets notice of a dispute from a CRA: (1) it must investigate the dispute, (2) it must review all relevant information from the CRA, (3) it must report the results of the investigation to the CRA, (4) if the information is incomplete or inaccurate it must notify the CRA of this fact, and (5) if the information is incomplete or inaccurate or it can't be verified after investigation, the information must be modified or deleted. 15 U.S.C. § 1681s-2(b).

The duty to report accurate information "not only requires that furnishers report information that is accurate, but . . . also requires that the information be complete so as to not be misleading." *Venugopal v. Dig. Fed. Credit Union*, No. 5:12-cv-6067 EJD, 2013 WL 1283436, at *3 (N.D. Cal. Mar. 27, 2013). "A claim of a violation of § 1681s-2(b) need not allege that the furnished information is 'patently incorrect,' a pleading could sufficiently state a claim if it alleges that the report is 'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Venugopal*, 2013 WL 1283436, at *3 (quoting *Gorman*, 584 F.3d at 1163.)

A private right of action may arise from the debtor to the furnisher of information on this duty to investigate and report laid out in section 1681s-2(b). *Gorman*, 584 F.3d at 1154. In *Gorman,* the Ninth Circuit concluded that, after receiving notice of a dispute from a CRA, a furnisher's decision to continue reporting a disputed debt without any notation of the dispute could present a

– 11 –

cognizable claim. *Gorman*, 584 F.3d at 1164 (citing *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008)). The dispute must be a bona fide dispute "that could materially alter how the reported debt is understood." *Id.* at 1163.

In this case, Plaintiff sufficiently alleges that she notified the CRAs that she disputed the credit information furnished by Ocwen and that they timely notified Ocwen of this dispute. (SAC ¶¶ 174, 176, 178.) Thus, Ocwen's duties under section 1681s-2(b) were triggered.

Plaintiff also alleges that Ocwen's subsequent investigation was unreasonable and failed to result in accurate information being reported to the CRAs. (SAC ¶ 185). Specifically, Plaintiff alleges that Ocwen "inaccurately and misleadingly reported Plaintiff's alleged debt as outstanding, even though Ocwen's own . . . negligence led to the quote and receipt of the allegedly insufficient payoff funds." (SAC ¶ 183.) "The reported information . . . did not provide any context to end users, including potential creditors, of the ongoing payoff dispute Ocwen was having with Prospect, while only suggesting that Plaintiff was not paying her mortgage." (SAC ¶ 169.) At a minimum, Plaintiff claims, Ocwen should have notated the account as being in dispute. (SAC ¶ 185.)

These allegations are sufficient to state a claim for relief that is plausible on its face. The fact that Plaintiff may have owed some amount of money to Ocwen is not ultimately dispositive as to whether the failure to provide context, a notation that the account was in dispute, or background could be construed at this stage of the proceedings to be misleading in such a way, and to such an extent, that it could be expected to adversely affect credit decisions. Thus, Ocwen's Motion to Dismiss this Count is **DENIED**.

E.  **CCRA, Cal. Civ. C. § 1785.25(a) (Count Three)**

The CCRA, similar to the FCRA, requires both that a furnisher of information to a CRA not transmit information that is incomplete or inaccurate and complete an

– 12 –

1  investigation upon notice of a dispute. Cal. Civil. Code § 1785.25. Because this
2  statute is "substantially based on the Federal Fair Credit Reporting Act, judicial
3  interpretation of the federal provisions is persuasive authority and entitled to
4  substantial weight when interpreting the California provisions." *Carvalho v. Equifax*
5  *Info. Servs., LLC*, 629 F.3d 876, 888 (9th Cir. 2010) (quoting *Olson v. Six Rivers*
6  *Nat'l Bank*, 3 Cal. Rptr. 3d 301, 309 (Ct. App. 2003)). Thus, similar to the FCRA,
7  Plaintiff must allege that the information furnished to the CRAs was either patently
8  incorrect or materially misleading. *Id.* at 889; *see also Cisneros v. U.D. Registry,*
9  *Inc.*, 46 Cal. Rptr. 2d 233, 254 (Ct. App. 1995) ("[A] report violates [the CCRA]
10 when it is misleading or incomplete even when it is technically accurate.")

11 As discussed above, the allegations in the SAC are sufficient to state a claim
12 for relief that is plausible on its face. *Carvalho*, in which the court refused to hold
13 the CRAs responsible for inaccurate reporting when a consumer admitted she was
14 in default but claimed the CRA should have included the reasons for the default, is
15 distinguishable. The Court in *Carvalho* noted that CRAs were third parties, lacking
16 any direct relationship to the consumer. As such, they were ill-equipped to
17 adjudicate the default dispute; CRAs merely collect information and report it. Not
18 so for a furnisher of information like Ocwen. In this case, assuming Plaintiff's
19 allegations are true, Ocwen was the cause of the default, failed to keep Plaintiff
20 apprised of the context or reason for the default, and failed to note in any way that
21 the default was disputed. This is sufficient to state a claim under the CCRA.

22 **F.  Negligence (Count Four)**

23 All three Defendants move to dismiss the negligence count against them.
24 (ECF Nos. 71, 74, 75.) In order to state a claim for negligence, Plaintiff must allege
25 that: (1) Defendant owed her a duty to exercise due care; (2) Defendant breached
26 that duty; (3) causation; and (4) damages. *Merrill v. Navegar, Inc.*, 28 P.3d 116, 123
27 (Cal. 2001). All three Defendants argue that Plaintiff has failed to allege that they
28 owed a duty of care to the Plaintiff. In addition, Prospect argues that Plaintiff fails

– 13 –

to allege a causal link between the damages and the alleged actions of Prospect. (ECF No. 75.)

### 1. Duty Owed by Financial Institutions

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Ass'n*, 283 Cal. Rptr. 53, 56 (Ct. App. 1991). "Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Id.* (quoting *Wagner v. Benson*, 161 Cal. Rptr. 516, 521 (Ct. App. 1980)). "In California, the test for determining whether a financial institution owes a duty of care to a borrower-client 'involves the balancing of various factors, among which are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.'" *Nymark*, 283 Cal. Rptr. at 58 (quoting *Connor v. Great Western Sav. & Loan Ass'n*, 447 P.2d 609, 617 (Cal. 1968)).

In the SAC, Plaintiff alleges that both Ocwen and Prospect knew there was a problem with the refinancing and negotiated with each other regarding the same, but failed to share the problems with her. (SAC ¶¶ 58–59, 65.) In fact, she alleges that she called Prospect multiple times and it assured her "everything was fine" and she could ignore the delinquency notices from Ocwen. (SAC ¶ 57.) At this point, Prospect's conduct was intended to affect the Plaintiff and the harm of ignoring the delinquency notices would foreseeably cause her harm. She did, in fact, suffer harm when Ocwen reported her delinquency to credit reporting agencies. Assuming the allegations in the SAC are true, as the Court must do, Prospect assumed a duty of care at the point when it assured Plaintiff everything was okay despite knowing that

– 14 –

there was a problem with the refinancing.

With respect to Ocwen, the reason the payoff balance was incorrectly calculated, according to the SAC, was because Ocwen erred in debiting two mortgage payments. (SAC ¶¶ 29–33.) Ocwen then compounded the error by failing to send the amended payoff balance amount to Escrow. (SAC ¶¶ 42–43.) Most egregiously, however, Ocwen then proceeded to send delinquent notices to Plaintiff without explaining what it had done wrong causing the delinquency to occur. (SAC ¶ 65.) Again, assuming these allegations in the SAC are true, Ocwen's actions were intended to affect the Plaintiff, harm to her was foreseeable, and she suffered harm directly because of Ocwen's multiple mistakes. The fact that Ocwen then proceeded to forward her delinquency to the credit reporting agencies increases the moral blame attached to the conduct.

According to the facts alleged in the SAC, both financial institutions assumed a greater role than just that of a financial institution in this case. Therefore, the Court finds both Ocwen and Prospect owed Plaintiff a duty of care.

**2.  Duty Owed by Escrow Company**

"It is generally held that no liability attaches to the escrow holder for his failure to do something not required by the terms of the escrow or for a loss incurred while obediently following his escrow instructions." *Axley v. Transamerica Title Ins., Co.*, 151 Cal. Rptr. 570, 574 (Ct. App. 1978) (quoting *Lee cv. Title Ins. & Trust Co.*, 70 Cal. Rptr. 378, 380 (Ct. App. 1968)). The escrow holder "has no general duty to police the affairs of its depositors." *Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.*, 41 P.3d 548 (Cal. 2002) (quotation marks omitted), *cert. denied* 537 U.S. 1001 (2002). However, "[a]n escrow holder is a fiduciary and like any other fiduciary is under a duty to communicate to his principal knowledge acquired in the course of his agency with respect to material facts which might affect the principal's decision as to a pending transaction." *Axley*, 151 Cal. Rptr. at 574 (citing *Contini v. W. Title Ins. Co.*, 115 Cal. Rptr. 257, 263 (Ct. App. 1974)). The

escrow company has a duty "to exercise reasonable skill and ordinary diligence in its employment" and if it acts negligently "it is ordinarily liable for any loss occasioned by its breach of duty." *Axley*, 151 Cal. Rptr. at 574.

In the SAC, Plaintiff alleges in the alternative that either Ocwen did not send Escrow the amended payoff balance until three weeks after escrow closed (SAC ¶¶ 42–43) or Escrow knew the payoff balance had been changed but illegitimately closed escrow and told Plaintiff escrow had closed successfully when it had not received the correct payoff balance. (SAC ¶¶ 46–48.) If the former is true, Escrow has no liability. However, Plaintiff may allege theories of liability in the alternative, and if either theory is sufficient, there is no grounds for a motion to dismiss. *See* Fed. R. Civ. P. 8(d)(2).

Assuming the latter is true, Plaintiff has adequately alleged that Escrow failed to exercise reasonable skill and ordinary diligence in its employment and failed to communicate its knowledge as to material facts (that is, that the payoff balance it received was incorrect and escrow should not have closed) to Plaintiff. Hence, at this stage of the proceedings, Plaintiff has sufficiently stated Escrow's breach of its duty.

### 3. Causation

Prospect claims that Plaintiff has failed to allege a causal link between the damages and alleged actions of Prospect. In addition, Prospect argues that any remedies for an erroneous payoff balance are governed by California Civil Code § 2943(d)(3). However, Plaintiff alleges more than an incorrect payoff balance in the SAC. Plaintiff alleges that when she received delinquency notices from Ocwen, she called Prospect, who knew there had been a problem with the payoff balance, but was told she could ignore the delinquency notices and that everything was fine. Assuming this is true, Plaintiff is not limited by Civil Code § 2943, and her damages, that is reporting the delinquency to credit reporting agencies, is a direct result of Prospect's reassurances. Hence, Prospect's argument on this ground must fail.

## III. CONCLUSION

For the reasons outlined above, the Court **DENIES** Prospect and Escrow's Motions to Dismiss. (ECF Nos. 74, 75). The Court **DENIES** Ocwen's Motion to Dismiss Count One to the extent it is based on California Civil Code § 1788.17, 15 U.S.C. §§ 1692e or 1692f, but **GRANTS** the Motion to Dismiss Count One to the extent it is based on any other code section. Finally, the Court **DENIES** Ocwen's Motion to Dismiss Counts Two through Four. (ECF No. 71.)

**IT IS SO ORDERED**.

**DATED: December 9, 2016**

Hon. Cynthia Bashant
United States District Judge