# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMILA S. RUVALCABA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>OCWEN LOAN SERVICING, LLC, *et al.*,<br><br>　　　　　Defendants. | Case No. 15-cv-00744-BAS(DHB)<br><br>**ORDER:**<br><br>**(1) GRANTING EQUITY TITLE COMPANY'S MOTION TO DISMISS; AND**<br><br>**(2) DENYING EQUITY TITLE COMPANY'S MOTION TO STRIKE**<br><br>**[ECF No. 107]** |

　　　Plaintiff Camila Ruvalcaba filed her Third Amended Complaint ("TAC") alleging one count of negligence against Equity Title Company. (ECF No. 99.) In response, Equity Title filed a Motion to Dismiss and a Motion to Strike. (ECF No. 107.) Plaintiff opposes both motions. (ECF No. 115.)

　　　The Court finds Equity Title's motions suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Equity Title's Motion to Dismiss and **DENIES** its Motion to Strike.

## I. BACKGROUND[1]

Plaintiff entered into a mortgage loan with Ocwen Loan Servicing, LLC ("Ocwen"). (TAC ¶ 37.) In August 2013, Plaintiff decided to refinance the Ocwen loan with Prospect Mortgage, LLC ("Prospect"). (*Id.* ¶ 44.) People's Escrow Inc., an escrow company, and Equity Title, a title company, assisted with the refinance. (*Id.* ¶ 53.) People's Escrow's role was to ensure Prospect sent Equity Title the proper payoff amount and, in turn, Equity Title sent the proper payoff amount to Ocwen. (*Id.*) As for Equity Title, it was responsible for ensuring that: "(1) Ocwen would release and discharge [its] Deed of Trust for the Property; (2) a Deed of Trust would be recorded for the Property on behalf of Prospect; and (3) therefore, Prospect would then have a first position lien on the Property following Plaintiff's Refinance." (*Id.* ¶ 92.)

On November 21, 2013, Prospect sent Lender's Closing Instructions to Equity Title.[2] (TAC ¶ 91.) The Lender's Closing Instructions state: "You Are Not Authorized to Close this Loan if . . . You have not verified within forty-eight (48) hours prior to closing, the payoff amount . . . ." (*Id.* ¶ 93.) Around four days later,

---

[1] All facts are taken from the TAC. For these motions, the Court assumes all facts alleged in the TAC are true. *See, e.g.*, *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

[2] Equity Title requests the Court take judicial notice of the Lender's Closing Instructions. (ECF No. 107-1.) In ruling on a Rule 12(b)(6) motion, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). However, the "incorporation by reference" doctrine permits the court "to take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999)). Moreover, the court may consider the full text of those documents even when the complaint quotes only selected portions. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995). Thus, the Court will not take judicial notice of the Lender's Closing Instructions, but it will consider them under the doctrine of incorporation by reference because Plaintiff identifies the document in the TAC and its authenticity is not in question. *See Knievel*, 393 F.3d at 1076.

Equity Title sent Prospect a Closing Protection Letter.[3] (*Id.* ¶ 89.) The Closing Protection Letter states that Equity Title will reimburse Prospect for actual losses incurred due to Equity Title's failure to comply with the Lender's Closing Instructions. (*Id.*)

On November 27, 2013, escrow closed and Prospect wired $284,247.23 to Equity Title for Ocwen's payoff ("Payoff Funds") and $1,420.00 to Equity Title for its insurance services. (TAC ¶ 97.) The Payoff Funds were about $4,000.00 less than the amount listed on the final payoff quote that Ocwen sent to Prospect on November 22, 2013. (*Id.* ¶ 83.) Escrow did not receive the final payoff quote. (*Id.* ¶ 85.) Thus, the Payoff Funds instead reflected a payoff quote that Ocwen sent to Prospect on November 20, 2013, which Escrow did receive. *(Id.* ¶¶ 81–82.)

On December 2, 2013, Equity Title wired the Payoff Funds to Ocwen. (TAC ¶ 112.) Equity Title also recorded a grant deed for Plaintiff's interest and a deed of trust in favor of Prospect. (*Id.* ¶ 105.) But as a result of receiving an incorrect payoff amount, Ocwen allegedly never executed a release and discharge of its prior deed of trust. (*Id.* ¶ 96.) Consequently, Prospect did not hold a valid first lien on the property. (*Id.* ¶ 143.) Meanwhile, Plaintiff started making mortgage payments to Prospect instead of Ocwen because she believed the Ocwen loan was paid off. (*Id.* ¶ 146.) A dispute then arose, leading to Ocwen sending "debt collection communications to Plaintiff ranging from delinquency notices to foreclosure threats" and reporting "outstanding delinquencies concerning the disputed alleged debt on Plaintiff's credit reports, which led to Plaintiff suffering severe emotional distress." (*Id.* ¶ 147.)

Based on these actions, Plaintiff alleges Equity Title "purposely or negligently failed to verify the proper payoff amount to Ocwen within forty-eight (48) hours prior to closing, which was noncompliant with Prospect's Closing Instructions." (TAC ¶

---

[3] Equity Title also requests the Court take judicial notice of the Closing Protection Letter. (ECF No. 107-1.) The Court will similarly consider this document under the doctrine of incorporation by reference because Plaintiff identifies it in the TAC and the authenticity of the document is not in question. *See Knievel*, 393 F.3d at 1076.

– 3 –

95.) Additionally, the Lender's Closing Instructions required Equity Title to send a Lender's Title Policy to Prospect by December 27, 2013. (*Id.* ¶ 133.) Plaintiff alleges a drafted Lender's Title Policy would have revealed to Equity Title that Ocwen never released and discharged its deed of trust. (*Id.*) Accordingly, Plaintiff alleges Equity Title failed to take any remedial action to fix the deficiency in the payoff amount. (*Id.* ¶ 135.)

## II. LEGAL STANDARD

A motion to dismiss pursuant to 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume

that "the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . law[] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

As a general rule, a court freely grants leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber*, 806 F.2d at 1401 (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)).

## III. DISCUSSION

Equity Title raises three arguments to dismiss Plaintiff's negligence claim: (1) Equity Title does not owe a duty of care to Plaintiff; (2) Equity Title's actions do not constitute a breach of duty; and (3) Plaintiff's claim is time-barred. (ECF No. 107.) The Court agrees with reasons one and three.[4] First, Plaintiff's factual allegations do not establish that Equity Title owed a duty to Plaintiff. Second, from the face of her pleading, Plaintiff's claim is time-barred.

### A. Duty of Care

In order to state a claim for negligence, Plaintiff must allege that: (1) Equity Title owed her a duty to exercise due care; (2) the company breached that duty; (3) causation; and (4) damages. *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 477 (2001). The Court will first analyze whether Equity Title owed a duty of care to Plaintiff under the liability standards for escrow companies. The Court then addresses two competing theories Plaintiff raises in her Opposition for establishing Equity Title owed her a duty.

//

---

[4] Because the Court ultimately concludes Plaintiff has not pled facts demonstrating Equity Title owed her a duty of care, the Court does not address whether Equity Title's actions constituted a breach of duty. *See Paz v. State of California*, 22 Cal. 4th 550, 559 (2000) ("The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion.").

### 1. Duty of an Escrow Company

"An escrow holder is an agent and fiduciary of the parties to the escrow." *Summit Fin. Holdings, Ltd. v. Cont'l Lawyers Title Co.*, 27 Cal. 4th 705, 711 (2002). Its "obligations are limited to compliance with the parties' instructions." *Id.* The escrow holder is generally not liable for a "failure to do something not required by the terms of the escrow or for a loss incurred while obediently following [its] escrow instructions." *Axley v. Transamerica Title Ins., Co.*, 88 Cal. App. 3d 1, 9 (1978) (quoting *Lee v. Title Ins. & Tr. Co.*, 264 Cal. App. 2d 160, 163 (1968)). Additionally, an escrow holder "has no general duty to police the affairs of its depositors." *Summit*, 27 Cal. 4th at 711. However, "[a]n escrow holder is a fiduciary and like any other fiduciary is under a duty to communicate to [its] principal knowledge acquired in the course of [its] agency with respect to material facts which might affect the principal's decision as to a pending transaction." *Axley*, 151 88 Cal. App. 3d at 9 (citing *Contini v. W. Title Ins. Co.*, 40 Cal. App. 3d 536, 547 (1974)). An escrow company also has a duty "to exercise reasonable skill and ordinary diligence in its employment," and if it acts negligently, "it is ordinarily liable for any loss occasioned by its breach of duty." *Id.*

The fiduciary responsibilities of a title company, acting as sub-escrow, are even more limited than the fiduciary responsibilities of an escrow company. *See Siegel v. Fidelity Nat. Title Ins. Co.*, 46 Cal. App. 4th 1181, 1194 (1996). A sub-escrow company's duties are defined and limited by the terms of the escrow instructions. *Markowitz v. Fidelity Nat. Title Co.*, 142 Cal. App. 4th 508, 527 (2006). Generally, a sub-escrow company cannot be liable to a third party that was not a party to the escrow instructions and did not provide the sub-escrow company with its own instructions. *See id.* at 528.

Plaintiff relies on labels and conclusions to attempt to state a claim against Equity Title. In the TAC, Plaintiff alleges Equity Title "negligently failed to verify the proper payoff amount to Ocwen . . . which was noncompliant with Prospect's

– 6 –

15cv0744

Closing Instructions." (TAC ¶ 95.) She further alleges that Equity Title "owed a duty to ensure the proper payoff amount was sent to Ocwen and that Prospect's Deed of Trust was in first position, so that the escrow on the Property could properly and legitimately close." (*Id.* ¶ 262.)

Plaintiff's negligence claim is built upon Equity Title's alleged failure to follow the Lender's Closing Instructions. (TAC ¶¶ 94–96, 110, 133.) But Plaintiff does not allege that she was a party to the Lender's Closing Instructions, and thus was owed a legal duty from Equity Title. Additionally, in the TAC, Plaintiff acknowledges that the Lender's Closing Instructions were between Prospect, Equity Title, and People's Escrow. (*Id.* ¶ 95.) Further, after reviewing the Lender's Closing Instructions, there is no indication that Plaintiff was a party to them. (ECF No. 107-1.) Although Plaintiff had an interest in the escrow, "that does not mean that [s]he was a party to the escrow, or to the escrow instructions on which [s]he relies." *See Markowitz*, 142 Cal. App. 4th at 526. Equity Title's duty arising out of the Lender's Closing Instructions was to Prospect, not to Plaintiff.

Further, there is not a single instance in the TAC where Plaintiff alleges she gave instructions to Equity Title. *See Markowitz*, 142 Cal. App. 4th at 527 (indicating that separate oral or written instructions from a plaintiff to a sub-escrow company could be sufficient to create a duty). Plaintiff's contact was with Prospect, not Equity Title. (TAC ¶¶ 54–55, 61–62, 64–65, 71.) Thus, based on the liability standards for escrow companies, Plaintiff's allegations do not establish Equity Title owed her a duty.

### 2. Third-Party Beneficiary

In her Opposition, Plaintiff presents a competing theory for establishing Equity Title owed her a duty of care: she asserts she is a third-party beneficiary to the Lender's Closing Instructions for multiple reasons. (ECF No. 115.) The Court finds Plaintiff's arguments unpersuasive. A third-party beneficiary may enforce a contract expressly made for its benefit. Cal. Civ. Code § 1559; *accord Markowitz*, 142 Cal.

App. 4th at 527. Further, a third-party beneficiary's rights are based upon the contracting parties' intent to benefit the third-party. *Markowitz*, 142 Cal. App. 4th at 527. This intent "is to be ascertained from the writing alone, if possible." Cal. Civ. Code § 1639.

Plaintiff initially argues she is a third-party beneficiary because the Lender's Closing Instructions give her an interest in the Lender's Title Policy. (Opp'n 10:22–28.) This interpretation is incorrect for several reasons. First, the Lender's Closing Instructions are distinct from a title insurance policy—the instructions set forth requirements for the title policy but do not create a policy of title insurance. *See, e.g.*, Cal. Ins. Code § 12340.2 (defining a title policy). The title policy is a separate document. (*See* ECF No. 107-1 (requiring Equity Title to send an "original and one copy of the final Lender's Title Policy" to Prospect).) *See also First Am. Title Ins. Co. v. XWarehouse Lending Corp.*, 177 Cal. App. 4th 106, 112–119 (2009) (analyzing the text of a title insurance policy and its attached schedules). In other words, the title policy creates an interest in title insurance. The Lender's Closing Instructions, which Plaintiff's claim is based on, do not.

Moreover, Plaintiff's argument is unsupported by the text of the Lender's Closing Instructions. The Lender's Closing Instructions require the insured on the separate Lender's Title Policy to be "Prospect Mortgage, LLC Its Successors and/or Assigns." (ECF No. 107-1.) Prospect does not identify Plaintiff as a successor or an assignee anywhere in the Lender's Closing Instructions. (*See id.*) Nor does Plaintiff allege she was Prospect's successor or assignee in her TAC. Further, although the Lender's Closing Instructions list Plaintiff as the "vesting" party for the Lender's Title Policy, this designation does not mean she is to have an interest in the policy. Rather, the designation requires the title policy to insure that title of the property is vested in Plaintiff. This insurance protects Prospect against loss or damage it sustains in the event that title is vested in someone other than Plaintiff. *See generally Elysian Inv. Grp. v. Stewart Title Guar. Co.*, 105 Cal. App. 4th 315, 320–21 (2002)

(discussing the purpose of title insurance). Thus, as mentioned, Prospect is the party with an interest in the Lender's Title Policy, not Plaintiff. *See, e.g.*, *Walters v. Marler*, 83 Cal. App. 3d 1, 31–34 (1978) (holding a property owner could not enforce a lender's title policy), *disapproved of on other grounds by Gray v. Don Miller & Assocs., Inc.*, 35 Cal. 3d 498 (1984); *see also Siegel v. Fid. Nat. Title Ins. Co.*, 46 Cal. App. 4th 1181, 1193 (1996); Miller & Star California Real Estate § 7:46 - Lender or Lienholder as Insured Party, 3 Cal. Real Est. § 7:46 (4th ed. May 2017 update) (discussing title insurance policies issued to protect lenders, as opposed to those policies issued to protect owners of property).

In addition, Plaintiff argues she is a third-party beneficiary because a properly-closed escrow would have benefited her. (Opp'n 11:1–15.) The Court finds the California Court of Appeal's decision in *Markowitz v. Fidelity National Title Co.*, 142 Cal. App. 4th 508 (2006), to be controlling on this point. In *Markowitz*, an individual sued a sub-escrow company for negligence for failing to follow an escrow instruction to reconvey a deed of trust. 142 Cal. App. 4th at 525. The individual was not a party to the escrow instructions. *Id.* at 526. The court held that a general benefit from the performance of the instruction is insufficient to establish the plaintiff as a third-party beneficiary to the instructions. *See id.* at 527–28. The court noted that "[t]he objective of the instructions was to guide completion of the refinance transaction," and thus, the "language of the instructions did not expressly evince the intent to benefit [the plaintiff]." *Id.* at 527. Therefore, the plaintiff "was not a third party beneficiary of the instruction." *Id.* at 528.

Here, like in *Markowitz*, Plaintiff's claim that she benefitted from the escrow instruction is insufficient to establish her as a third-party beneficiary. First, similar to the plaintiff in *Markowitz*, Plaintiff is not a party to the Lender's Closing Instructions. Second, like the escrow instructions in *Markowitz*, the Lender's Closing Instructions were drafted to guide a refinancing between two companies. Third, nothing in the Lender's Closing Instructions expressly indicates an intent to benefit Plaintiff. The

– 9 –

Lender's Closing Instructions outline protections for Prospect, in the form of a Lender's Title Policy and the Closing Protection Letter, but Plaintiff is not included on these protections. (ECF No. 107-1.) Thus, Plaintiff's claim that the Lender's Closing Instructions provide her a benefit does not create a duty from Equity Title to Plaintiff.

Accordingly, the Court is unpersuaded by Plaintiff's argument that Equity Title owed her a duty of care because she is a third-party beneficiary to the Lender's Closing Instructions.

### 3. *Biakanja* Factors

In the alternative, Plaintiff instructs the Court to apply the *Biakanja* factors to find that Equity Title owes a duty to Plaintiff. (Opp'n 11:21–13:16.) A court applies the *Biakanja* factors to determine whether or not to hold a defendant liable to a third party that is not in privity of contract with the defendant. *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958). There are six factors a court must weigh: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm. *Id.*

Here, the Court finds the California Court of Appeal's reasoning in *Alereza v. Chicago Title Co.*, 6 Cal. App. 5th 551, 560–62 (2016), to be persuasive. There, the court applied the *Biakanja* factors to hold that an escrow company did not owe a legal duty to an individual, Alereza, who was neither a party to the escrow nor mentioned as a beneficiary in the escrow instructions. *See Alereza*, 6 Cal. App. 5th at 554. The court reasoned that the escrow agreement was intended "only to complete a business transaction" between two companies and, "[a]t most, the benefit to Alereza was a collateral benefit of the escrow transaction." *Id.* at 560. The indirect impact on Alereza led the court to find that all six Biakanja factors mitigate against imposing a

duty on the escrow company. *See id.* at 560–62. Thus, because Alereza "did not sustain his losses as a direct result of the escrow company's negligence," the court found he was not owed a duty under the factors. *Id.* at 554.

Similar to the defendant in *Alereza*, Equity Title is an escrow company that is being sued by an individual who is not a party to the escrow instructions and is not a third-party beneficiary. Just like the escrow agreement in *Alereza*, the Lender's Closing Instructions were issued to guide Equity Title and People's Escrow through the refinancing, not to confer a benefit to Plaintiff. (ECF No. 107-1.) Therefore, the direct impact of Equity Title's failure to follow the Lender's Closing Instructions fell on the issuer of the instructions, Prospect. The indirect impact on Plaintiff makes this case analogous to *Alereza*. For that reason, the Court finds that an analysis of the *Biakanja* factors comes to the same conclusion as *Alereza*—Equity Title owes no duty to Plaintiff.

In sum, regardless of whether the Court analyzes Plaintiff's claim under the liability standards for escrow companies, third-party beneficiary law, or the *Biakanja* factors, Plaintiff's allegations do not demonstrate Equity Title owed her a duty of care. She therefore fails to state a plausible negligence claim against Equity Title.

### B. Time-Bar

Equity Title urges the Court to dismiss Plaintiff's claim on statute of limitations grounds. (ECF No. 107.) "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* (alteration in original) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

1 | Both parties agree the applicable statute of limitations is two years. *See* Cal. Civ. Proc. Code § 339 (governing "an action upon a contract, obligation or liability not founded upon an instrument of writing"). Additionally, an action "shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder." *Id.*

Plaintiff's negligence claim is based on Equity Title's purported failure to follow the Lender's Closing Instructions for an escrow that closed on November 27, 2013. (TAC ¶¶ 94–96, 110, 133.) Plaintiff filed the TAC, which was the first time that Equity Title was named as a Defendant, on January 31, 2017, a little over one year too late. (ECF No. 99.) Consequently, Plaintiff's claim against Equity Title is time-barred unless she has pled around the two year statute of limitations. The Court will address two avenues for preserving Plaintiff's claim: (1) the discovery rule; and (2) the two continuing-wrong accrual principles.

### 1. The Discovery Rule

"Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988). In order to rely on the discovery rule, "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Grisham v. Phillip Morris USA*, 40 Cal. 4th 623, 638 (2007) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005)).

Here, Plaintiff's allegations fail to satisfy both prongs of the discovery rule. First, Plaintiff has pled no facts relating to the time and manner of discovery of the claim against Equity Title. In Plaintiff's Opposition, she alleges that "it was not until Plaintiff engaged in formal discovery with other Defendants that she was able to properly allege that [Equity] Title was a necessary and proper defendant to name in

her TAC."[5] (ECF No. 115.) But the Court "may not look beyond the complaint to a plaintiff's moving papers." *See Schneider*, 151 F.3d at 1197. Thus, because the TAC does not contain allegations stating when and how Plaintiff discovered the claim against Equity Title, Plaintiff's allegations fail to satisfy prong one of the discovery rule.

Second, Plaintiff has pled no facts alleging an inability to make an earlier discovery despite reasonable diligence.[6] Because the TAC lacks these allegations, the second prong of the discovery rule is also not satisfied. Accordingly, Plaintiff cannot rely on the discovery rule to delay the accrual of her claim.

### 2. Continuing-Wrong Accrual Principles

A claim can also be preserved by continuing-wrong accrual principles. *Aryeh v. Canon Bus. Sol., Inc.*, 55 Cal. 4th 1185, 1197 (2013). The two main principles are (1) the continuing-violation doctrine and (2) the theory of continuous accrual. *Id.* The continuing-violation doctrine "applies where there is no *single incident* that can fairly or realistically be identified as the cause of significant harm." *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (emphasis added); *see also Aryeh*, 55 Cal. 4th at 1197 (explaining that "[s]ome injuries are the product of a series of small harms, any one of which may not be actionable on its own"). "[A] pattern of reasonably frequent and similar acts may, in a given case, justify treating the acts as an indivisible course of conduct actionable in its entirety." *Aryeh*, 55 Cal. 4th at 1198.

---

[5] Plaintiff repeatedly mentions in her Opposition the need for "proper discovery" in order to support her claim against Equity Title. (ECF No. 115.) However, "pleading requirements prevent parties from filing complaints in order to conduct aimless fishing expeditions in the hope that some helpful evidence might possibly be uncovered." *Dichter-Mad Family Partners, LLP v. United States*, 707 F. Supp. 2d 1016, 1052 (C.D. Cal. 2010). The "burden is on the party seeking to conduct additional discovery to put forth sufficient facts" to state a cause of action. *See id.* Because Plaintiff has not stated a claim to begin with, she is not entitled to conduct discovery on her defective negligence claim. *See id.*

[6] Further, the Lender's Closing Instructions indicate that Plaintiff did have an opportunity to make an earlier discovery. Plaintiff, after all, signed the Lender's Closing Instructions, and instruction eight of Section I(B) of the Lender's Closing Instructions required Equity Title to give a copy of the Lender's Closing Instructions to Plaintiff prior to closing. (ECF No. 107-1.)

– 13 –

15cv0744

The continuing-violation doctrine renders the entire course of conduct actionable. *Id.* at 1199.

By comparison, the theory of continuous accrual applies "[w]hen an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period." *Aryeh*, 55 Cal. 4th at 1199 (quoting *Hogar Dulce Hogar v. Cmty. Dev. Comm'n*, 110 Cal. App. 4th 1288, 1295 (2003)). Under the continuous accrual theory, each new breach independently provides all the elements of a new claim. *Id.* Unlike the continuing-violation doctrine, the theory of continuous accrual allows a plaintiff to recover only for breaches falling within the applicable statute of limitations. *Id.*

Plaintiff argues in her Opposition that her claim can be preserved by both of these principles. (ECF No. 115.) The Court disagrees. There are no allegations in the TAC that would warrant the use of either of the continuing-wrong accrual principles.

Plaintiff cannot rely on the continuing-violating doctrine to delay her claim. Plaintiff specifies a single event in the TAC, Equity Title's failure to follow the Lender's Closing Instructions, as the basis for her negligence claim against Equity Title. (TAC ¶¶ 94–96, 110, 133.) Although Plaintiff alleges Equity Title failed to follow the Lender's Closing Instructions at multiple instances, (*id.* ¶¶ 95, 133), the latest alleged instance occurred in December 2013, (*id.* ¶ 133). Even if the Court were to use that date, the claim would still be time-barred by the two year statute of limitations period. Thus, it would be improper for the Court to use the continuing-violation doctrine to preserve her claim.

Additionally, Plaintiff cannot rely on the theory of continuous accrual to delay her claim. Plaintiff does not identify in the TAC a series of independent actionable wrongs committed by Equity Title. Plaintiff does not allege a duty, breach, causation, or damages relating to any other action by Equity Title other than its failure to follow the Lender's Closing Instructions. Moreover, because the theory of continuous accrual limits recovery to the latest independent action within the statute of

– 14 –

15cv0744

1 limitations, any of Equity Title's actions prior to January 31, 2015, would not be actionable. The theory of continuous accrual is therefore inapplicable to Plaintiff's claim.

In sum, Plaintiff's claim against Equity Title is time-barred by the two year statute of limitations. Further, Plaintiff has not pled sufficient facts to warrant the use of the discovery rule or either of the continuing-wrong accrual principles.

* * *

Because Plaintiff has not alleged facts demonstrating Equity Title owed Plaintiff a duty of care, and because the face of the TAC reveals Plaintiff's claim is time-barred, the Court will dismiss Plaintiff's negligence claim. However, Plaintiff may be able to plead facts sufficient to demonstrate Equity Title owed her a duty of care and that the statute of limitations does not bar her claim. Thus, the Court will grant Plaintiff leave to amend her claim. *See* Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co.*, 806 F.2d at 1401.

**C. Motion to Strike**

Equity Title also moves to strike Plaintiff's claim for punitive damages. (ECF No. 107.) The Court denies Equity Title's Motion to Strike an allegation from the TAC. Given that the Court has effectively dismissed Plaintiff's negligence claim, the Court discerns little value in determining whether a particular allegation should be stricken from the TAC. *See, e.g.*, *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003) ("Motions to strike are generally regarded with disfavor[.]").

//
//
//
//
//
//

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Equity Title's Motion to Dismiss and **DENIES** its Motion to Strike (ECF No. 107). The Court dismisses Plaintiff's Third Amended Complaint against Equity Title with leave to amend. If Plaintiff chooses to file a Fourth Amended Complaint, it must be filed no later than **July 27, 2017**.

**IT IS SO ORDERED**.

DATED: July 13, 2017

Hon. Cynthia Bashant
United States District Judge